J-S14039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
JUSTIN J. COLLINS   :
  :
Appellant   :   No. 1667 EDA 2017

Appeal from the Judgment of Sentence April 21, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008924-2014

BEFORE:   OTT, J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY RANSOM, J.:       **FILED APRIL 26, 2018**

Appellant, Justin J. Collins, appeals from the judgment of sentence of eleven-and-one-half to twenty-three months of incarceration followed by seven years of probation, imposed on April 21, 2017, following his guilty plea for: unlawful contact with minor -- sexual offenses; and for indecent assault -- person less than thirteen years of age.[1] We affirm.

In January 2017, Appellant entered a negotiated guilty plea to the aforementioned charges. **See generally** Appellant's Written Guilty Plea

_____

[1] 18 Pa.C.S. §§ 6318(a)(1), 3126(a)(7), respectively.


*   Retired Senior Judge assigned to the Superior Court.

Colloquy, 1/10/17; Notes of Testimony (N. T.), 1/10/17.[2] Appellant was

immediately sentenced to seven years of probation for the unlawful contact

with minor charge, but his sentence for indecent assault was deferred pending

a sexually violent predator[3] assessment[4] pursuant to Megan's Law.[5] In

_____

[2] From January 2013 to April 2014, on more than one occasion, Appellant inserted his penis into the mouth of a four-year-old male child. N. T., 1/10/17, at 33-34.

[3] A sexually violent predator is an individual convicted of sexually violent offenses who is determined to have engaged in the violent conduct "due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12. Sexually violent predators are subjected to expanded notification requirements. 42 Pa.C.S. §§ 9799.26-9799.27. Here, Appellant was determined not to be a sexually violent predator. N. T., 4/21/17, at 3, 19.

[4] At the time of Appellant's plea and sentencing, assessments were controlled by 42 Pa.C.S. § 9799.24(a) ("After conviction but before sentencing, a court shall order an individual convicted of a sexually violent offense to be assessed by the board."). On October 31, 2017, subsequent to Appellant's sentencing on both counts, Section 9799.24 was held unconstitutional by ***Commonwealth v. Butler***, 173 A.3d 1212 (Pa. Super. 2017), which was made retroactive by ***Commonwealth v. Rivera-Figueroa***, 174 A.3d 674 (Pa. Super. 2017). Nevertheless, ***Butler*** and ***Rivera-Figueroa*** ultimately do not disturb this appeal, because, notwithstanding the assessment pursuant to Section 9799.24, Appellant still properly received lifetime registration, because his conviction for 18 Pa.C.S. § 3126(a)(7) would still qualify as a Tier III crime, requiring lifetime registration. 42 Pa.C.S. §§ 9799.14(d), 9799.15(a)(3).

[5] "Megan's Law IV [is] more commonly known as the Sexual Offender Registration and Notification Act ('SORNA'). SORNA went into effect on December 20, 2012, and provided for the expiration of Megan's Law III at that time." ***Commonwealth v. Derhammer***, 173 A.3d 723, 724-25 (Pa. 2017) (footnote omitted). At the time of Appellant's plea and sentencing, SORNA was contained within 42 Pa.C.S. §§ 9799.10-9799.41. On February 21, 2018,

February 2017, after retaining new counsel, Appellant filed a motion to withdraw his guilty plea, arguing that he wanted to review discovery; the motion was denied without a hearing. In April 2017, Appellant was sentenced to eleven-and-one-half to twenty-three months of incarceration for indecent assault; his previously imposed probationary sentence was to be served consecutively to his confinement.

Appellant timely appealed. Appellant filed a court-ordered Pa.R.A.P 1925(b) statement of errors complained of on appeal, and the trial court issued a responsive opinion.

On appeal, Appellant raises the following issues for our consideration:

1.     Did the trial [court] err as a matter of law by accepting a plea on the record that was not voluntary or knowing[,] as [Appellant] was under pressure from his attorney to plead guilty?

2.     Did the attorney for the defendant at trial Andre Martino[,] Esquire act ineffectively for failing to convey the ramifications of Megan's Law to the [Appellant] thereby preventing him from making an informed decision on whether to plead guilty or take the case to trial?

3.     Did the trial attorney for [Appellant] at trial Andre Martino act ineffectively for failing to advise the defendant regarding work

_____

an additional section was added at § 9799.42; this addition does not affect the current action.

Throughout this memorandum, we shall refer to Appellant's registration requirements as arising under "Megan's Law," not "SORNA," because Appellant, the Commonwealth, and the trial court all employ the term "Megan's Law" and not "SORNA." We wish to remain consistent with the parties and the trial court in our nomenclature.

release option and failing to adequately prepare and meet with the defendant to prepare his case or put the interests of his client first?

Appellant's Brief at 4.[6]

> We begin by setting forth our standard of review. In **Commonwealth v. Broaden**, 980 A.3d 124 (Pa.Super. 2009), we summarized the principles governing post-sentence[7] motions to withdraw pleas:
>
>> [P]ost-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage entry of guilty pleas as sentence-testing devices. A defendant must demonstrate that manifest injustice would result if the court were to deny his post-sentence motion to withdraw a guilty

---

[6] Appellant has not numbered the pages of his brief, in violation of Pa.R.A.P. 2173. Therefore, when referring to Appellant's brief, we have numbered the pages for ease of reference.

[7] At the time Appellant had filed his motion to withdraw his guilty plea, he had already gone through the sentencing procedure and knew what his sentence was going to be for both counts, even though his judgment of sentence for indecent assault was not yet entered on the record. For that reason, we believe that the post-sentence standard of review is appropriate. To the extent that the presentence standard of review would be applicable for the indecent assault count, even if we were to apply this more lenient standard of review, our conclusion would not change, and we would still affirm the judgment of sentence. **See Commonwealth v. Campbell**, 455 A.2d 126, 128 (Pa. 1983) (for a motion to withdraw a guilty plea prior to sentencing, "a court may allow the defendant to withdraw his guilty plea where he demonstrates fair and just reason for the withdrawal" (internal quotation marks omitted)); **Commonwealth v. Elia**, 83 A.3d 254, 261-62 (Pa. Super. 2013) (for a presentence motion to withdraw a guilty plea, a "trial court's decision regarding whether to permit a guilty plea to be withdrawn should not be upset absent an abuse of discretion"); **Commonwealth v. Pardo**, 35 A.3d 1222, 1226 (Pa. Super. 2011) ("The standard for permitting a defendant to withdraw a plea of guilty varies according to the point in the proceedings at which the motion to withdraw is made. Our Supreme Court has established significantly different standards of proof for defendants who move to withdraw a guilty plea before sentencing and for those who move to withdraw a plea after sentencing.").

plea. Manifest injustice may be established if the plea was not tendered knowingly, intelligently, and voluntarily. In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. A deficient plea does not *per se* establish prejudice on the order of manifest injustice.

*Id.* at 129 (citations omitted). "It is well-settled that the decision whether to permit a defendant to withdraw a guilty plea is within the sound discretion of the trial court." *Commonwealth v. Hart*, 174 A.3d 660, 664 (Pa.Super. 2017) (applying abuse of discretion in post-sentencing context). The term discretion

imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, and discretionary power can only exist within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judges. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary action. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Shaffer*, 551 Pa. 622, 712 A.2d 749, 751 (1998) (citation omitted).

*Commonwealth v. Kehr*, ___ A.3d ___, 2018 Pa. Super. 44, 2018 WL 1077109, at *1-*2 (filed Feb. 28, 2018).

Here, Appellant claims that he did not knowingly and voluntarily enter his negotiated guilty plea for four specific reasons: (1) his plea counsel pressured him into pleading guilty; (2) he had been "told" that he "could plead no contest"; (3) he had also been "told" that he "could get a work release"; and (4) was "not knowledgeable about Megan's Law." Appellant's Brief at 7-8. However, Appellant's contentions are belied by the record.

First, the record indicates that no one pressured or forced Appellant to plead guilty. Appellant executed his written guilty plea colloquy, affirming: "Nobody promised me anything or threatened me or forced me to plead guilty." Appellant's Written Guilty Plea Colloquy, 1/10/17, at 1. During Appellant's oral guilty plea colloquy, the following dialogue occurred:

> [**THE COURT**:] You could challenge your sentence and file an appeal if someone forced you to take this resolution of pleading guilty.
>
> Has anyone forced you to do this?
>
> [**APPELLANT**]: No, Your Honor.
>
> **THE COURT**: I know you spoke to your mother, but she doesn't have such control over you that she forced you to make this decision, nor has your attorney forced you to make the decision. Is that correct?
>
> [**APPELLANT**]: That's correct.

N. T., 1/10/17, at 38-39. "A defendant is bound by the statements which he makes during his plea colloquy." *Commonwealth v. Orlando*, 156 A.3d 1274, 1281 (Pa. Super. 2017) (internal brackets and citation omitted). Appellant thus cannot now assert claims that contradict the statements he made during his guilty plea colloquy that he was not forced or pressured into pleading guilty by anyone, including his plea counsel. Appellant's Brief at 7; *Orlando*, 156 A.3d at 1281; N. T., 1/10/17, at 38-39.

Similarly, during Appellant's oral guilty plea colloquy, both the Commonwealth and the trial court explained to Appellant that he could not receive a negotiated sentence and plead no contest; if he pleaded no contest, his sentence would be open, not negotiated. N. T., 1/10/17, at 22-24. When

asked by the trial court if he understood the distinction, Appellant answered affirmatively. *Id.* at 25. Appellant was then given time to confer with his plea counsel, after which counsel informed the court that Appellant agreed to plead guilty in order to receive the negotiated sentence. *Id.* at 26. Furthermore, Appellant signed a "Written **Guilty Plea** Colloquy"; nothing on the form states or implies that Appellant was pleading no contest instead of guilty. Again, Appellant is bound by the statements he made during his guilty plea colloquy. *Orlando*, 156 A.3d at 1281. Hence, his current statement that he "was told . . . that he could plead no contest" is untenable. Appellant's Brief at 8; *see also* N. T., 1/10/17, at 22-26.

Additionally, the trial court repeatedly informed Appellant during his oral plea colloquy that he could not receive work release. N. T., 1/10/17, at 7-8, 14.[8] Therefore, Appellant's current assertion that he believed work release was an option when he pleaded guilty is not supported by the record. *Compare* Appellant's Brief at 8, *with* N. T., 1/10/17, at 7-8, 14.

Finally, Appellant avers that he was ignorant of the consequences of Megan's Law when he pleaded guilty, including "the different tiers[9] that would have been applicable." Appellant's Brief at 8. Once again, such an assertion is undermined by the record. At the beginning of Appellant's oral

---

[8] The Commonwealth also confirmed that Appellant was ineligible for work release. N. T., 1/10/17, at 5.

[9] "Sexual offenses shall be classified in a three-tiered system composed of Tier I sexual offenses, Tier II sexual offenses and Tier III sexual offenses." 42 Pa.C.S. § 9799.14(a).

colloquy, the Commonwealth stated that Appellant would be subject to "Megan's Law registration," which the trial court corroborated. N. T., 1/10/17, at 3, 10. When the trial court asked the Commonwealth, "How long would the Megan's Law requirement be for the indecent [assault,]" the Commonwealth answered: "On the indecent assault graded as an F3[ -- *i.e.*, a felony of the third degree], **tier three, lifetime**." *Id.* at 10 (emphasis added). At the conclusion of sentencing, at the trial court's prompting, the Commonwealth reiterated: "You are subject to **lifetime** registration, **tier three**, with the Pennsylvania State Police. You must register with the Pennsylvania State Police immediately . . ." *Id.* at 55 (emphasis added). Thus, Appellant cannot now propose that he was ignorant of the sexual offender registration requirements, including the multi-tier system for calculating the duration of the registration obligation. **Compare** Appellant's Brief at 8, **with** N. T., 1/10/17, at 3, 10, 55.[10]

Accordingly, none of the reasons that Appellant suggests render his plea involuntary and unknowing are supported by the record. **See** Appellant's Brief

_____

[10] We note that, had the trial court failed to inform Appellant of his Megan's Law/SORNA registration requirements or had Appellant otherwise established his ignorance of said registration requirements, such a failure to understand "what the plea connoted and its consequences" would have constituted a fair and just reason for withdrawal of his guilty plea. **Commonwealth v. Hart**, 174 A.3d 660, 668 (Pa. Super. 2017) ("because the trial court failed to inform Appellant of SORNA's registration requirements at the time of his plea and sentencing, it abused its discretion in denying his post-sentence motion to withdraw his plea"; "Appellant was never appraised of the SORNA consequences of his plea until after sentencing").

at 7-8; *Kehr*, 2018 WL 1077109, at *1-*2.  Consequently, the trial court did not abuse its discretion in declining to permit a post-sentence withdrawal of Appellant's guilty plea.  *See id.*

Appellant's remaining challenges concern ineffective assistance of plea counsel.  Appellant's Brief at 8-9.

> [I]n *Commonwealth v. Holmes*, 621 Pa. 595, 79 A.3d 562 (2013), our Supreme Court reiterated its preference that claims pertaining to ineffectiveness be deferred to PCRA[11] review.  "By way of summary, we hold that [the] general rule of deferral to PCRA review remains the pertinent law on the appropriate timing for review of claims of ineffective assistance of counsel; we disapprove of expansions of the exception to that rule[.]" *Id.* at 563.
>
> This stated preference poses an impediment to the trial court's ability to entertain the instant motions to withdraw the pleas, and, concomitantly, our ability to review those decisions on direct review.

*Kehr*, 2018 WL 1077109, at *4-*5.  As Appellant's remaining claims pertain to ineffectiveness, they are not ripe for our review and must be deferred to PCRA review.  Appellant's Brief at 8-9; *Kehr*, 2018 WL 1077109, at *4-*5.

Judgment of sentence affirmed.

---

[11] Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/18